UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KENNETH L. MILLER )
)
v. ) NO. 2:06-CV-14
)
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

MEMORANDUM OPINION

The plaintiff Kenneth Miller has filed a motion for summary judgment on

his complaint to obtain judicial review of the final decision of the defendant

Commissioner of Social Security Jo Anne B. Barnhardt to deny his application for

disability insurance benefits and supplemental security income under the Social

Security Act. The defendant has also filed a motion for summary judgment.

Mr. Miller was born in 1969 and was 35 years old at the time of his

administrative hearing. [Tr. 306]. He completed eleventh grade and has relevant

past work experience as a steel construction worker, pipe layer, and carpenter. [Tr.

23, 306]. Mr. Miller alleges he is disabled as of January 15, 2003, from hepatitis

C, human immunodeficiency virus [HIV], back and leg pain, nerve damage,

numbness, muscle spasms, weakness, nausea, and depression. [Tr. 23]. Based

upon a finding that his severe impairments were not severe enough, the

Administrative Law Judge [ALJ] found that Mr. Miller was not disabled as defined by the Social Security Act. [Tr. 26].

At Mr. Miller's administrative hearing held on February 10, 2005, the testimony of Mr. Miller and vocational expert Ms. Cathy Sanders was received into evidence. [Tr. 305-24]. Mr. Miller testified that he last worked in the construction field building bridges, operating heavy equipment, and working with steel. [Tr. 306-07]. Prior to that, he worked laying water and sewer pipes and as a home constructor. [Tr. 307, 308]. Mr. Miller testified he does not think he can work anymore because he is HIV positive and has hepatitis C. [Tr. 308]. He does not have a lot of strength and feels sick in the mornings. [*Id.*]. In addition, because of an outbreak of shingles on his left leg that caused nerve damage, he is unable to stand and sit for long periods of time. [*Id.*]. Mr. Miller testified he feels depressed, mainly because of his health problems. [Tr. 310]. He occasionally helps with the housework, including laundry and other light housework. [Tr. 311-12].

Vocational expert Cathy Sanders testified next that Mr. Miller's past relevant work as a steel construction worker was heavy and skilled and his work as a pipe layer and construction frame carpenter was heavy and semi-skilled. [Tr. 315]. The ALJ then asked her to assume a man of Mr. Miller's height, weight,

education, and work background who was restricted to sedentary and light work and who had an emotional disorder with restrictions regarding his ability to perform work-related activities. [Tr. 315-16]. She was also asked to assume such a person was HIV positive and had hepatitis C. [Tr. 316]. According to the vocational expert, such a person could perform work as a hand packager, assembler, non-construction laborer, bagger, stocker, cleaner, and sorter, *inter alia*. [Tr. 317-18].

The ALJ ruled that Mr. Miller was not disabled because his severe impairments of HIV and hepatitis C were not severe enough for a finding of disability. [Tr. 26]. The ALJ then found Mr. Miller retained the residual functional capacity [RFC] to perform sedentary and light work that did not require close work with the public. [Tr. 28]. With those limitations, Mr. Miller could perform work that exists in significant numbers in the national economy. [Tr. 29].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record

3

substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Mr. Miller requests summary judgment and claims the ALJ failed to accord the proper weight to the opinion of his treating source, nurse practitioner W. Davis. In January 2005, Mr. Davis completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) form and indicated Mr. Miller could lift/carry a maximum of five pounds occasionally and two pounds frequently. [Tr. 264]. Mr. Davis also stated that Mr. Miller must change position frequently because of bone and nerve pain. [*Id.*]. Mr. Davis also completed for Mr. Miller a Medical Assessment of Ability to Do Work-Related Activities (Mental) form in January 2005. [Tr. 266-67]. He indicated Mr. Miller had a fair ability to follow work rules, relate to co-workers, function independently, and understand, remember, and carry out simple job instructions. [Tr. 266-67]. He also had a poor or no ability to deal with the public, use judgment with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, and understand, remember, and carry out complex and detailed job instructions. [*Id.*].

4

According to the ALJ, Mr. Davis was not considered an acceptable source because, as a nurse practitioner, he does not have "the authority to make such determinations." [Tr. 27]. Indeed, according to 20 C.F.R. § 404.1513 (d)(1), nurse practitioners are not acceptable medical sources. Because the opinions expressed by Mr. Davis were made by an unacceptable medical source, the ALJ had substantial evidence to dismiss them.

Mr. Miller next claims the ALJ erred in his evaluation of his mental impairments and their effect on his ability to work. According to the ALJ, there was no indication that Mr. Miller's mental symptoms were "not controlled with medications prescribed by her [*sic*] primary care physician and nurse practitioners. He has not required psychiatric care, counseling, or hospitalization for a mental problem." [Tr. 27]. The ALJ indicated he carefully considered all of the medical evidence, including the April 2004 opinion of a state agency consultative psychologist, Dr. Frank Kupstau. [*Id*.]. According to Dr. Kupstau, Mr. Miller had moderate difficulties in maintaining concentration, persistence, or pace. [Tr. 195]. The ALJ wrote that Dr. Kupstau's opinion was inconsistent with the medical evidence. [Tr. 27]. For example, Dr. Roy Nevils found in April 2004 that Mr. Miller only had an adjustment disorder with a depressed mood and demonstrated just mild symptoms of social and occupational functioning. [Tr. 184]. In addition,

5

Dr. Nevils indicated Mr. Miller played video games and read a lot. [Tr. 183]. Also, Dr. Jonathan Moorman completed an HIV Medical Assessment Question in February 2005 for Mr. Miller, showing that he did not have any work-related limitations because of concentration problems. [Tr. 273]. Because the medical evidence fails to indicate that any of Mr. Miller's mental difficulties significantly inhibit his abilities, the ALJ's decision was based on substantial evidence.

Mr. Miller also contends the ALJ's RFC finding was not supported by substantial evidence. Specifically, Mr. Miller argues the ALJ did not perform the functional analysis of his ability to perform work-related tasks that is required by *Social Security Ruling* 96-8p [SSR 96-8p]. SSR 96-8p requires the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, . . . [a] discuss[ion of] the individual's ability to perform sustained work activities, . . . and [a] descri[ption of] the maximum amount of each work-related activity the individual can perform." The ALJ did just that. He found that Mr. Miller retained the RFC to perform "sedentary and light exertional work that does not require close work with the public." [Tr. 28]. He then described for five pages the medical evidence that supported his RFC conclusion. [Tr. 24-28]. The ALJ discussed Mr. Miller's ability to perform sustained work activities as well, noting that he agreed with the opinions of Dr. Marianne Filka, Dr. Nevils, and Dr.

6

Jonathan Moorman. [Tr. 26]. Finally, the ALJ provided a description of the maximum amount of activity Mr. Miller could perform. [*Id*.]. Because the ALJ followed the requirements of SSR 96-8p, Mr. Miller's allegation is incorrect.

Finally, Mr. Miller claims the ALJ failed to ask a proper hypothetical question of the vocational expert that accurately portrayed his limitations. The ALJ asked the vocational expert to consider someone who had the limitations contained in an April 2004 report by Dr. Nevils: an adjustment disorder with a depressed mood. [Tr. 184]. The doctor also indicated Mr. Miller did not appear to have any major problems with memory, concentration, or adaptability because of his mental disorders and could manage his own money. [*Id*.]. An ALJ is only required to include in his hypothetical questions the limitations he finds to be credible and supported by the medical evidence. The ALJ found Dr. Nevils' limitations credible because he found them to be in concert with the medical evidence. [Tr. 26]. Because the ALJ found Dr. Nevils credible, he was entitled to include his limitations in the hypothetical question posed to the vocational expert. No error was made.

While this court does not find error with the hypothetical questions the ALJ asked the vocational expert concerning Dr. Nevils, the court does have trouble with some of the ALJ's questioning of the vocational expert concerning the impact of

7

Mr. Miller having hepatitis C and being HIV positive. While asking a hypothetical question of the vocational expert, the ALJ remarked:

> "And finally I ask you to assume that [Mr. Miller] has hepatitis C and is HIV positive. To be candid with you, I'm not sure what of a vocational significance that has, but maybe you can't work around food or other things. But maybe you know more about that than I do. I'm sure you do." [Tr. 316].

The vocational expert went on to explain that she eliminated from consideration jobs that would be "inappropriate" and would be excessive Occupational Safety and Health Administration [OSHA] hazards. [Tr. 317].

This court finds the ALJ and vocational expert's discussion about the effects of Mr. Miller's HIV and hepatitis C status to be lacking in specificity. What jobs were eliminated from consideration by the vocational expert? Why were they eliminated? What are the vocational implications of Mr. Miller's conditions? Pursuant to sentence four of 42 U.S.C. § 405(g), this case is remanded to the Commissioner for further development of the vocational evidence relevant to Mr. Miller having hepatitis C and being HIV positive.

After careful consideration of the entire record of proceedings related to this case, the defendant's motion for summary judgment [Doc. 12] is denied, Mr. Miller's motion for summary judgment is granted in part, and this case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further

8

development of the vocational evidence relevant to Mr. Miller having hepatitis C and being HIV positive.

An appropriate order will follow.


ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE